IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs August 28, 2018

**LAMAR M. CULLOM v. STATE OF TENNESSEE**

**Appeal from the Criminal Court for White County**
**No. CR5977    David A. Patterson, Judge**

_____

**No. M2017-02165-CCA-R3-PC**

_____

The Petitioner, Lamar M. Cullom, appeals the White County Criminal Court's denial of his petition for post-conviction relief, arguing that trial counsel provided ineffective assistance with regard to Exhibit 6, an unedited audio/video recording of the drug transaction between the Petitioner and a confidential informant that was not shown to the jury. The Petitioner specifically contends that (1) trial counsel failed to object to the prosecutor's comment that the unedited recording did not have "substance"; (2) trial counsel failed to use the unedited recording during his cross-examination of the confidential informant; (3) trial counsel failed to object to the trial court's comment to the jury that the unedited recording contained just transportation, that no one was there, and that anything else on it was irrelevant; (4) trial counsel failed to object to the prosecutor's comment to the jury that the trial court was correct in stating that the unedited recording contained just transportation, that no one was there, and that anything else on it was irrelevant; (5) trial counsel failed to object to the trial court's ruling that the jury could not view the unedited recording; and (6) the cumulative effect of trial counsel's errors prejudiced him. We affirm the denial of post-conviction relief.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

CAMILLE R. MCMULLEN, J., delivered the opinion of the court, in which THOMAS T. WOODALL and TIMOTHY L. EASTER, JJ., joined.

Matthew S. Bailey, Spencer, Tennessee, for the Petitioner, Lamar M. Cullom.

Herbert H. Slatery III, Attorney General and Reporter; Brent C. Cherry, Senior Counsel; Bryant C. Dunaway, District Attorney General; and Bruce MacLeod, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

**Trial.** In February 2013, the Petitioner was charged with two counts of violating the drug-free zone statute. State v. Lamar Mandell Cullom, No. M2014-00414-CCA-R3-CD, 2015 WL 3898088, at *1 (Tenn. Crim. App. June 25, 2015); see T.C.A. § 39-17-432. The case arose from a drug transaction between the Petitioner and a confidential informant (hereinafter "CI"), who was working for the narcotics division of the White County Sheriff's Department. Lamar Mandell Cullom, 2015 WL 3898088, at *1.

At trial, the CI testified that she contacted the Petitioner and asked if he had any drugs available for purchase, and the Petitioner told her to meet him at his apartment thirty minutes later. Id. Before driving to the Petitioner's apartment, the CI met with Detectives Joey Williams and Craig Capps, who searched her person and her vehicle, wired her with an audio/video recording device, and gave her $200 cash for the purchase of the drugs. Id.

When the CI arrived at the Petitioner's apartment, she talked with the Petitioner's girlfriend, Sara Cressman, until the Petitioner arrived approximately ten minutes later. Id. Moments later, the Petitioner pulled the drugs out of his pocket and gave them to the CI, and the CI gave him the $200. Id. During this transaction, the CI asked the Petitioner if the substance was "soft or hard" cocaine, and the Petitioner replied that it was "soft." Id. He told her "that it was some really good stuff" and that he could acquire more if she needed it. Id. After the transaction was complete, the CI got into her vehicle and exited the apartment's parking lot. Id. As she was leaving, she encountered a friend. Id. The CI lowered her window and spoke to her friend, but neither woman exited her vehicle. Id. At the conclusion of this conversation, the CI drove back to the "staging area" where she gave the cocaine to the detectives and was searched a second time. Id. The State played Exhibit 7, a redacted version of the audio/video recording of the drug transaction for the jury. Id.

On cross-examination, the CI admitted that she had entered a guilty plea to theft prior to the Petitioner's trial. Id. at *2. She acknowledged that she had been paid $100 for her participation in this drug transaction and that if she set up a transaction that did not occur, she would not be paid. Id.

Detective Williams testified that he met with the CI at the "staging area" and gave her $200 of "controlled buy money." Id. When the CI left, Detective Williams followed the CI to ensure that she did not leave the area of the Petitioner's apartment without his knowledge. Id. He also trailed the CI back to the staging area after the drug transaction with the Petitioner was complete. Id. Detective Williams said that the recording device he provided to the CI was "extremely difficult" to use because it was a hand-held

- 2 -

recorder, and the user "can't just hold it up and point it at [the subject]." Id. He stated that the drug transaction involving the Petitioner occurred near a public park. Id.

On September 12, 2013, the Petitioner was convicted in Count 1 of casual exchange of cocaine and in Count 2 of delivery of 0.5 grams or more of cocaine in a drug-free zone, for which he received an effective fifteen-year sentence. Id. at *1. This court affirmed the Petitioner's convictions on direct appeal and remanded for entry of a corrected judgment. Id.

**Redacted Recording.** At trial, Exhibit 7, the redacted audio/video recording depicting the drug transaction between the Petitioner and the CI, was played for the jury. While no drugs or money are clearly visible in Exhibit 7 given the position of the recording device, Exhibit 7 does show the Petitioner taking something, presumably the cocaine, out of his pocket. Perhaps most significantly, Exhibit 7 contains the following conversation between the Petitioner, the CI, and Sara Cressman that occurred during the drug transaction:

Petitioner:        Here you go. [3:22:27][1]

CI:                   Ya got something for me? [3:22:28]

Petitioner:        [unintelligible] [3:22:34]

CI:                   Is it hard or soft? [3:22:26]

Petitioner:        Soft.  That's it, though.  It's, d[--]n, where's it at? [3:22:39]

CI:                   Don't tell me you lost that s[---]. [3:22:40]

Cressman:        Yeah, that'd not be good. [3:22:45]

Petitioner:        [pulling something from his pocket] Uh-huh. [3:22:45]

Cressman:        You'd be in big trouble. [3:22:46]

Petitioner:        That's all he had left, too, man. [3:22:48]

CI:                   Can you get more later? [3:22:50]

---

[1] Time references refer to the elapsed time at the conclusion of the statement.

| | |
|---|---|
| Petitioner: | He's gonna get some, I promise. It's . . . hey, uh, give me till, 'bout probably well I'd say . . . I'd say to this evening, like this evening, he'd be good. I was gonna bring it up at the end but that's all he had left. [3:23:02] |
| CI: | Will you text me when you get more? [3:23:03] |
| Petitioner: | Yeah. [3:23:03] |
| CI: | Alright. [3:23:04] |
| Petitioner: | You'll probably, that s[---]s just good as far as . . . . [3:23:06] |
| CI: | Alright, well just, uh . . . . [3:23:08] |
| Petitioner: | I'm not the only one sweating so f[---]ing much, man. [3:23:10] |
| CI: | Well, just call me. [3:23:11] |
| Cressman: | Probably have. [3:23:13] |
| Petitioner: | Ah yeah, that's perfect, right now. That's just a good day for it anyway. I'm scare to smoke a cigarette, right now, I know what you mean. I'll be, uh, I'll call ya when I get some more. It, uh, it won't be long. [3:23:23] |
| CI: | Alright. I'll talk to y'all later. [3:23:24] |
| Petitioner: | [unintelligible] [3:23:25] |
| Cressman: | Bye. [3:23:26] |
| CI: | Bye y'all. [3:23:26] |

**Unedited Recording.** Exhibit 6, the unedited audio/video recording, was admitted at trial but was not played for the jury. It was also admitted as an exhibit at the post-conviction hearing. Exhibit 6 shows the officers giving the CI money to make the drug buy and providing her with the recording device. It then shows the CI traveling to the Petitioner's apartment and talking with Sara Cressman until the Petitioner arrives

home.  Exhibit 6 also contains the following conversation between the Petitioner, the CI, and Cressman prior to the drug transaction:

Petitioner:      D[--]n, it's f[--]king, it's hot, I went and got that s[--]t and drank it.  That s[--]t made me sweat, sweat, sweat, sweat, and sweat. [3:21:33]

Cressman:       That's part of what happens. [3:21:35]

Petitioner:      That's s[--]ts not cool.  It's only been 45 minutes. [unintelligible]. [3:21:42]

CI:             What you'd do? [3:21:43]

Petitioner:      I didn't do nothing.  I just drunk one of them detox pills. [3:21:45]

CI:             Oh, that's, that's what you're talking about. [3:21:48]

Petitioner:      Yeah, them things, they make you sweat, sweat, sweat, sweat. [3:21:52]

CI:             You got a drug test?  No? [3:21:54]

Petitioner:      No, I just a . . . . [3:21:56]

Cressman:       Took it because his PO. [3:21:58]

Petitioner:      [unintelligible]

Cressman:       Most of the time he's clean in advance, but he didn't and he's scared. [3:22:03]

Petitioner:      Cause I forgot the only pill [unintelligible] . . . two days from now and it's not, would be . . . . [3:22:09]

Cressman:       Don't matter, either way you wouldn't have been clean for it. [3:22:11]

Petitioner:      I wouldn't have.  I would be clean if I had done my pills and two days from now I would have. [3:22:14]

- 5 -

| Cressman: | No, you wouldn't have. [3:22:15] |
|---|---|
| Petitioner: | How much you wanna bet? [3:22:17] |
| Cressman: | Yeah, taking a detox pill. [3:22:18] |
| CI: | No, I wouldn't be taking no detox pill. [3:22:18] |
| Cressman: | Yeah, you would have. [3:22:20] |
| Petitioner: | I would be clean from just not doing nothing. [3:21:21] |
| Cressman: | No, you wouldn't have. [3:22:22] |

After depicting the drug transaction, Exhibit 6 shows the CI returning to her car and beginning to exit the parking lot of the Petitioner's apartment. Moments later, the CI appears to stop her car to greet a friend. Exhibit 6 contains the following conversation between the CI and her friend:

| CI: | Hi, what are you doing? [3:24:45] |
|---|---|
| Friend 1: | What's up? [03:24:46] |
| CI: | What have you been doing? [03:24:47] |
| Friend 1: | Nothing. [3:24:49] |
| CI: | I've been trying to text you. [3:24:50] |
| Friend 1: | I know but you know why I haven't been f[---]ing answering. [3:24:53] |
| CI: | Why though? [3:24:54] |
| Friend 1: | Because of Jayson. [3:24:55] |
| CI: | Me and him split up. [3:24:56] |
| Friend 1: | Well, that's what I heard, but I didn't know. [3:24:57] |
| CI: | Yeah, I left it there. [3:24:59] |

Friend 1:            You know . . . . [3:24:59]

Possibly Friend 2:   Everybody split up. [3:25:01]

CI:                  [unintelligible] [3:25:01]

[unidentifiable sound]

Possibly Friend 2:   It's in the air. [3:25:02]

CI:                  I'm telling you, break that s[---].  Well, is your number still the same, will you talk, will you text me? [3:25:07]

Friend 1:            Do what? [3:25:08]

CI:                  Will you text me later? [3:25:09]

Friend 1:            Yeah. [3:25:10]

CI:                  Are you sure? [3:25:11]

Friend 1:            I promise. [3:25:11]

CI:                  I love you, Mandy. [3:25:13]

Friend 1:            I love you, too. [3:25:14]

CI:                  Don't hate me because of Jayson. [3:25:15]

Friend 1:            I won't. [3:25:16]

CI:                  You swear?  What are you doing? [3:25:18]

[pause]

Friend 1:            I'll text you. [3:25:21]

CI:                  Text me. [3:25:23]

Friend 1:            Okay. [3:25:23]

CI:                    Alright. [3:25:24]

Friend 1:              [unintelligible] [3:25:24]

CI:                    Give me your, I mean, I ain't got the kids till three, let's go. [3:25:27]

Friend 1:              Okay. [3:25:27]

CI:                    Alright.  2631 is my number. [3:25:31]

Friend 1:              5652 my number's still the same. [3:25:33]

CI:                    The 212. [3:25:34]

Friend 1:              Yeah. [3:25:35]

CI:                    Hang on.  212 . . . . [3:25:38]

Friend 1:              5652. [3:25:40]

CI:                    Alright, I'm texting you right now. [3:25:42]

Friend 1:              Alright. [3:25:42]

CI:                    Okay. [3:25:42]

Friend 1:              Alright. [3:25:42]

CI:                    Bye, I love you. [03:25:44]

The aforementioned conversation appears unrelated to the prior drug transaction between the Petitioner and the CI that occurred minutes earlier.  In addition, Exhibit 6 contains no indication of a transfer of drugs between the CI and her friend.  A careful review of this portion of the recording indicates that a second friend may have been present and may have spoken during this brief encounter, as indicated.

**Post-Conviction**.  On June 24, 2016, the Petitioner filed a timely pro se petition for post-conviction relief.  Following the appointment of counsel, the Petitioner filed three amended post-conviction petitions.

At the post-conviction hearing, the Assistant District Attorney who prosecuted the Petitioner at trial testified that although he did not personally edit the video recording of the drug transaction, he was present when another individual from the district attorney's office edited the recording. The prosecutor explained that there was a "an extensive full version video" in Exhibit 6 that included the search of the CI, the CI's drive to the buy location, the drug transaction between the Petitioner and the CI, and the CI's drive back from the buy location. He acknowledged that in Exhibit 6, the CI did "appear to stop her vehicle and have a brief conversation with an individual on her way back to the original staging area." However, he said that the only recording played for the jury was Exhibit 7, which was "the drug transaction itself." He added,

> Prior to the drug transaction, there's nothing of substance in my opinion. The drug transaction itself was edited because [the Petitioner] talks about testing positive for drugs in the urine stream and a violation of parole or probation, so that was edited [out]. And the portion of [the] CI . . . leaving the buy location [and driving] back to the staging area [was edited out], because again, I don't believe there is anything of substance [related to her] leaving that area[.]

The prosecutor said that the CI could not have gotten the drugs from the friend she encountered after leaving the Petitioner's apartment because both recordings show that the CI bought the drugs from the Petitioner. He asserted that the "discussion from the time [the CI] arrives at the apartment complex until the time she leaves is an indication that there's a drug transaction going on."

When questioned about the portion of Exhibit 6 showing the encounter between the CI and her friend, the prosecutor said, "I do not believe anybody exits the[ir] vehicle," and "I do not believe there is any drug talk" during that part of the recording. The prosecutor said that although the CI did not initially testify about encountering her friend, he specifically asked the CI if she had met anyone as she was leaving, which gave the CI the opportunity to correct her testimony before the jury. The prosecutor denied hearing a car door shut on the portion of the recording showing the encounter between the CI and her friend. He said that during this part of the unedited recording, the CI can be heard talking to another person in a different vehicle, although this person is not shown on the recording. He added, "I do not believe that what is contained on that [unedited] video [recording] has any substance to it. There is . . . nobody on the video. It is simply of [the CI] talking to somebody. She travels back to the . . . staging area where the cocaine that she purchased from [the Petitioner] is recovered." The prosecutor also stated that during trial, either Detective Capps or Detective Williams testified that they maintained visual surveillance of the CI from the time she arrived at the buy location at the Petitioner's apartment until the time that she arrived back at the staging area, which also assured him

that the CI had not obtained the drugs from her friend after she left the Petitioner's apartment. In addition, the prosecutor noted that the Petitioner's trial counsel thoroughly cross-examined the CI about whether she obtained the drugs from her friend rather than the Petitioner.

The prosecutor said that during deliberations, the jury asked to see Exhibit 6, the unedited recording, but the trial court refused, stating that "[t]here's nothing on [Exhibit 6] other than the transportation, from the time the device was given to the C.I., transporting it to the alleged scene and from the alleged scene," which was "edited out" in Exhibit 7. The prosecutor said the court informed the jury that Exhibit 6 contained "some things that are not relevant and would be inadmissible," which made it "inappropriate" for the jury to view. He said the trial court then said, "You really don't see much in the transportation. There's no one there, just driving down the road, as I understand it?" The prosecutor replied, "That's correct," to the court's question because he believed the trial court's statement regarding the contents of the unedited recording was appropriate under the circumstances. The prosecutor explained, "[T]here [was] inadmissible evidence [in Exhibit 6] that could not be played for the jury, i.e., [the Petitioner's] prior drug use and parole history or probation issue."

The prosecutor asserted the unedited recording in Exhibit 6 showed nothing nefarious between the CI and her friend during their encounter. However, he opined that the admission of Exhibit 6 would have prejudiced the Petitioner because in it, the Petitioner talks about having to take a drug test for his probation officer. The prosecutor also opined that Exhibit 6 would not have helped the Petitioner's case because it shows that there was no transfer of drugs between the friend and the CI. He explained that Exhibit 7, the redacted recording that was played for the jury, clearly indicates that a drug transaction occurred between the Petitioner and the CI.

Trial counsel, who also testified at the post-conviction hearing, discussed his strategy at the Petitioner's trial, stating: "[I] argue[d] basically, in [Exhibit 7, the redacted] video . . . you never saw cocaine and you never saw a transaction." Trial counsel said there were many times at trial when he suggested that the CI could have obtained the cocaine from someone other than the Petitioner. Trial counsel said he specifically argued that because the officers had not searched the CI's undergarments prior to the drug transaction, the CI could have hidden drugs on her person prior to going to the Petitioner's apartment. He also suggested that the CI was dishonest because she had a prior conviction for theft.

When asked about the portion of Exhibit 6 showing the CI's brief conversation with her friend after leaving the Petitioner's apartment, trial counsel stated that "there's really no substance to it" because the CI "says a few words to her [friend] and drives on."

He added that the encounter was "[v]ery short" and took place in "less than a minute." When questioned about whether one or two friends spoke to the CI during this encounter, trial counsel replied, "You can only hear one other person. If there was another person there, you don't see them." Trial counsel said it was his belief that the CI was only talking to one other person during the encounter. He said he did not play Exhibit 6, the unedited recording, for the jury because "it would have prejudiced [the Petitioner] more than it helped him." Specifically, he said that Exhibit 6 was prejudicial because it showed the Petitioner talking about his inability to pass a drug test. He also said the encounter between the CI and her friend would not have helped the Petitioner's case because nothing about drugs or a drug transaction was discussed.

Trial counsel stated that he did not object to Exhibit 6, the unedited recording, being admitted at trial because the parties had agreed that Exhibit 6 was never going to be viewed by the jury. He said that before the trial court told the jury that they would not be able to view this recording, the court asked if there was an issue about showing it, and counsel for both parties replied that the unedited recording should not be shown to the jury. Trial counsel specifically told the trial court that the unedited recording should not be shown because it included the Petitioner talking about being on probation and not being able to pass a drug test.

Trial counsel stated that it was his trial strategy to not allow the jury to view the unedited recording in Exhibit 6. He stated that although Exhibit 6 was not shown to the jury, he was able to cross-examine the CI about whether the drugs in this case came from her friend rather than the Petitioner.

At the conclusion of this hearing, the post-conviction court made the following oral ruling as to whether trial counsel had provided ineffective assistance regarding the unedited recording:

> Regarding the video, there [wa]s an agreement before trial . . . that the video ha[d] been redacted so that certain things that [we]re prejudicial to the [Petitioner we]re not shown. Trial counsel has helped the court to understand that these [we]re uncontroverted redactions. They [we]re necessary to remove the prejudicial evidence of the [Petitioner's] prior misconduct and drug use, where he's on probation or parole and that he's using.
>
> The redaction as to the confidential informant stopping and speaking with a friend or two friends or three friends, the trial attorney showed it was appropriate for that part of the video to be redacted. It does not show any drug activity. It does not [al]lude to any drug activity. The court has had

- 11 -

the opportunity to see it. The court had the opportunity to hear more of it today again, but I viewed it because the [P]etitioner's attorney and the [S]tate's attorney gave me a copy[,] and I looked at it, looked at the entire video which is marked as number three today. And I do not find any reason to believe that it would have been good trial strategy for [trial counsel] to play [Exhibit 6, the unedited] tape. I do not find that there is good relevant evidence for the [Petitioner] in his defense certainly. [The Petitioner wa]s able to argue and cross[-]examine [the CI] without that [unedited] video that there was a stopping and an opportunity for there to be a drug transaction other than the one with the [P]etitioner. This activity takes place for a minute or less. And to show the video would have lessened the [P]etitioner's argument that the drug transaction could have taken place with another [person] other than the [P]etitioner.

. . . .

The issue regarding the [unedited] video, there is no indication of prosecutorial misconduct, nor is there any indication of ineffective assistance of counsel. That allegation is without merit.

On October 18, 2017, the post-conviction court entered an order denying post-conviction relief. In it, the court made the following findings of fact and conclusions of law regarding the ineffective assistance of counsel claim:

The Petitioner alleged that his trial attorney was ineffective in his representation by allowing the State to play a redacted version of the audio/video recording of the events of the drug transaction and those surrounding the transaction.

The Petitioner proposed that, had the jury viewed [Exhibit 6] recording in its entirety, they would have seen (or heard) an encounter the confidential informant had with a friend following the transaction. The portion of the recording was redacted by agreement of the Petitioner's trial attorney. Some of the redacted portion contained material that was prejudicial to the Petitioner and/or irrelevant to the proceedings. The Petitioner proposed that had the video been shown in its entirety, it could [have] be[en] argued by the Petitioner, that the subject drugs were not acquired by the confidential informant from the [Petitioner], but from the friend.

Contrary to this claim of ineffective assistance of [c]ounsel, the testimony of the Petitioner's trial attorney and the trial transcript showed that the Petitioner's trial attorney cross-examined the confidential informant to establish this encounter. The Petitioner's trial attorney also showed that, had the jury seen and heard the portion of the recording involving the confidential informant's friend, the Petitioner's argument that he was not involved in the transaction would have been weakened. This is because the encounter [between the CI and her friend] was brief, contained no video that could be construed to be a drug transaction, and contained no "drug-related" conversation.

The Court finds that this allegation is without merit.

. . . .

Having considered all proof presented by the Petitioner, the proof presented by the State, and the record as a whole, the Court finds that Petitioner has not carried the burden to demonstrate that he should be granted relief.

Following entry of this order, the Petitioner filed a timely notice of appeal.

## ANALYSIS

The Petitioner makes numerous ineffective assistance of counsel claims related to the unedited recording of the drug transaction between the CI and the Petitioner. Specifically, the Petitioner contends: (1) trial counsel failed to object to the prosecutor's comment that the unedited recording did not have "substance"; (2) trial counsel failed to use the unedited recording to cross-examine the CI; (3) trial counsel failed to object to the trial court's comment to the jury that the unedited recording was just transportation, that no one was there, and that anything else on it was irrelevant; (4) trial counsel failed to object to the prosecutor's comment to the jury that the trial court was correct in stating that the unedited recording was just transportation, that no one was there, and that anything else on it was irrelevant; (5) trial counsel failed to object to the trial court's ruling that the jury could not view the unedited recording; and (6) the cumulative effect of trial counsel's errors prejudiced him.

Post-conviction relief is only warranted when a petitioner establishes that his or her conviction or sentence is void or voidable because of an abridgement of a constitutional right. T.C.A. § 40-30-103. The Tennessee Supreme Court has held:

- 13 -

A post-conviction court's findings of fact are conclusive on appeal unless the evidence preponderates otherwise. When reviewing factual issues, the appellate court will not re-weigh or re-evaluate the evidence; moreover, factual questions involving the credibility of witnesses or the weight of their testimony are matters for the trial court to resolve. The appellate court's review of a legal issue, or of a mixed question of law or fact such as a claim of ineffective assistance of counsel, is de novo with no presumption of correctness.

Vaughn v. State, 202 S.W.3d 106, 115 (Tenn. 2006) (internal citations and quotation marks omitted); see Felts v. State, 354 S.W.3d 266, 276 (Tenn. 2011); Frazier v. State, 303 S.W.3d 674, 679 (Tenn. 2010).

A post-conviction petitioner has the burden of proving the factual allegations by clear and convincing evidence. T.C.A. § 40-30-110(f); Tenn. Sup. Ct. R. 28, § 8(D)(1); Dellinger v. State, 279 S.W.3d 282, 293-94 (Tenn. 2009). Evidence is considered clear and convincing when there is no serious or substantial doubt about the accuracy of the conclusions drawn from it. Lane v. State, 316 S.W.3d 555, 562 (Tenn. 2010); Grindstaff v. State, 297 S.W.3d 208, 216 (Tenn. 2009); Hicks v. State, 983 S.W.2d 240, 245 (Tenn. Crim. App. 1998).

In order to prevail on an ineffective assistance of counsel claim, the petitioner must establish that (1) his lawyer's performance was deficient and (2) the deficient performance prejudiced the defense. Vaughn, 202 S.W.3d at 116 (citing Strickland v. Washington, 466 U.S. 668, 687 (1984); Baxter v. Rose, 523 S.W.2d 930, 936 (Tenn. 1975)). A petitioner successfully demonstrates deficient performance when the petitioner establishes that his attorney's conduct fell "below an objective standard of reasonableness under prevailing professional norms." Goad v. State, 938 S.W.2d 363, 369 (Tenn. 1996) (citing Strickland, 466 U.S. at 688; Baxter, 523 S.W.2d at 936). Prejudice arising therefrom is demonstrated once the petitioner establishes "'a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.'" Id. at 370 (quoting Strickland, 466 U.S. at 694). "Because a petitioner must establish both prongs of the test, a failure to prove either deficiency or prejudice provides a sufficient basis to deny relief on the ineffective assistance claim." Id.

We note that "[i]n evaluating an attorney's performance, a reviewing court must be highly deferential and should indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." State v. Burns, 6 S.W.3d 453, 462 (Tenn. 1999) (citing Strickland, 466 U.S. at 689). However, this "'deference to matters of strategy and tactical choices applies only if the choices are informed ones

- 14 -

based upon adequate preparation.'" House v. State, 44 S.W.3d 508, 515 (Tenn. 2001) (quoting Goad, 938 S.W.2d at 369).

**1. Failure to Object to Prosecutor's Comment that Unedited Recording did not have "Substance."**

The Petitioner argues that trial counsel was ineffective in failing to object to the prosecutor's comment that the unedited recording did not have "substance." He claims that this false comment on the evidence prejudiced him because it confirmed the CI's testimony and bolstered her credibility. He asserts that no curative instructions were given following this comment and that the comment confused the trial court, causing it to provide an erroneous instruction regarding the unedited recording to the jury during deliberations.

The Petitioner maintains that the unedited recording does have "substance" because it shows that the CI's encounter with her friend, which was "more than a simple "Hi," "Hey" and "Call me later," gave the CI the time and opportunity to obtain the drugs from her friend rather than the Petitioner. He also asserts that the CI's comment during the unedited recording, which he interprets as "take that s[--]t," along with a sound that he characterizes as a car door shutting, and the CI's question, "What are you doing?" followed by silence may have appeared suspicious to the jury. Finally, he contends that although the CI testified that she talked with one friend, the unedited recording shows that two friends were present during the encounter and can be heard on the recording.

At trial, the CI testified that she had reviewed the two compact discs containing audio and video footage from the date of the drug transaction and that these two recordings were a "very accurate" depiction of what occurred on that date. The CI stated that there was a full version of what occurred and a shortened version that did not contain her drive from the staging area to the buy location and from the buy location back to the staging area. When the court indicated that it was confused about the two different recordings, the following exchange occurred:

> The Court: I'm not sure I understand, [Prosecutor].
>
> [Prosecutor]: Yes, Your Honor, I probably can make that more clear. For the record, there's a full version of the video and the audio of the time that the video/audio started until it was stopped, after the drug transaction was completed.
>
> The Court: And you've introduced that as Exhibit 6?

| [Prosecutor]: | That's correct. And then Exhibit 7 would be a shortened version for the purposes of time. |
|---|---|
| The Court: | The shortened version, you just took a part of Exhibit 6 onto this disc? |
| [Prosecutor]: | That's correct. |

When the prosecutor asked to play Exhibit 7, the shorter, redacted version of the recording for the jury, the following conversation occurred:

| The Court: | And [Exhibit 7] is just of the return from the— |
|---|---|
| [Prosecutor]: | [Exhibit 7] is . . . from the beginning of the transaction, where [the CI's] been fitted with the device and given the money, and then it moves past the travel from the buy location—from the staging area to the buy location. That part is not here, because it's a few minutes and doesn't have substance. Then there's the buy, the buy that occurs, and then there's a part that's cut out from the buy location back to the staging area that doesn't have substance to it. |
| The Court: | So, what you're showing is, allegedly, the [drug] transaction? |
| [Prosecutor]: | That's correct, yes. |

At the post-conviction hearing, both the prosecutor and trial counsel testified that the portion of the unedited recording dealing with the CI's brief encounter with her friend contained nothing of substance. Moreover, the prosecutor and trial counsel agreed that the unedited recording would have been prejudicial to the Petitioner if admitted at trial because it contained the Petitioner's statements that he was afraid he would fail the drug test given by his probation or parole officer. In addition, the prosecutor and trial counsel agreed that the unedited recording was prejudicial to the Petitioner because it clearly showed that there was no transfer of drugs between the CI and her friend, thereby strengthening the State's case that the Petitioner was the individual who sold the CI the cocaine. The trial transcript shows that the prosecutor brought up the CI's encounter with her friend on direct examination and that trial counsel thoroughly cross-examined the CI about whether she obtained the cocaine from her friend rather than the Petitioner.

- 16 -

The prosecutor also testified that the CI could not have gotten the cocaine from her friend because the redacted recording, which was admitted at trial, clearly showed that the CI purchased the drugs from the Petitioner. He also asserted that the unedited recording did not show the CI or her friend exiting their vehicles and did not include any discussion regarding drugs. Additionally, the prosecutor stated that a detective had testified at trial that he maintained visual surveillance of the CI from the time she arrived at the Petitioner's apartment until the time that she returned to the staging area, which also assured him that the CI had not obtained the drugs in this case from her friend.

Trial counsel noted that the encounter between the CI and her friend was "very short" and lasted "less than a minute." He explained that the State and the defense had an agreement that the unedited recording would not be shown to the jury because it contained the Petitioner's statements about not being able to pass a drug test given by his parole or probation officer. Trial counsel confirmed that it was a part of his trial strategy not to allow the jury to view the unedited recording because it was prejudicial to the Petitioner.

The post-conviction court, in its oral ruling at the conclusion of the evidentiary hearing, found that the parties had agreed prior to trial to admit only the redacted recording to prevent the jury from hearing the evidence prejudicial to the Petitioner that was on the unedited recording. The post-conviction court also ruled that the portion of the unedited recording depicting the brief exchange between the CI and her friend was not relevant to trial, explaining:

> It does not show any drug activity. It does not [al]lude to any drug activity. The court has had the opportunity to see it. . . . And I do not find any reason to believe that it would have been a good trial strategy for [trial counsel] to play the tape. I do not find that there is good relevant evidence for the [Petitioner] in his defense certainly. [The Petitioner wa]s able to argue and cross[-]examine without that [unedited] video that there was a stopping and an opportunity for there to be a drug transaction other than the one with the [P]etitioner. This activity takes place for a minute or less. And to show the video would have lessened the [P]etitioner's argument that the drug transaction could have taken place with another [person] other than the [P]etitioner.

We agree with the post-conviction court's conclusion that the Petitioner failed to establish that trial counsel was ineffective in failing to object to the prosecutor's comment that the unedited recording did not have "substance." Our review of the unedited recording shows that it does not, in any way, indicate that the CI obtained the cocaine from her friend, rather than the Petitioner. The proof presented at the post-

- 17 -

conviction hearing shows that the unedited recording was irrelevant and inadmissible, and our review of the unedited recording fully supports this conclusion. Consequently, we conclude that the Petitioner has failed to establish that trial counsel was deficient in not objecting to the prosecutor's comment or that but for counsel's alleged deficiency, the result of the trial would have been different. The Petitioner is not entitled to relief on this issue.

## 2. **Failure to Use the Unedited Recording During Cross-examination.**

The Petitioner also contends that trial counsel was ineffective in failing to use the unedited recording to cross-examine the CI. He suggests that trial counsel could have impeached the CI's credibility by making the jury aware of the presence of a second friend during the exchange, by showing that the conversation between the CI and her friend lasted longer than a brief exchange, and by suggesting that the recording captured the sound of a car door closing, all of which he claims left open the possibility that the CI obtained the drugs from her friend rather than the Petitioner.

At trial, the prosecutor asked the CI about the interaction with her friend following the drug transaction:

Q.      Okay. Did you go straight back to the staging area?

A.      Yes.

Q.      At some point, did you stop on the way out?

A.      On the way out, I was pulling out of Knoll Crest [Apartments], and a friend was pulling in . . . . She pulled right next to me. She said, "Hi." I told her, "Hey," to call me later. I didn't get out of the vehicle, she didn't get out of the vehicle, and we just drove off. I drove off.

Later, during cross-examination, Petitioner's trial counsel asked the CI about her encounter with her friend:

Q.      Now, when you—when you stopped to talk to that friend on the way out, how do we know that you didn't get the drugs from her and give that money to her?

A.      I did not get out of my vehicle, she didn't get out of her vehicle, and it was actually, as you're pulling out of Knoll Crest, there's a sign in

- 18 -

the middle. There's a way in and a way out. I'm on one side of the sign, and she's on the other side. And it's just a simple conver[sation]—there—the vehicle was just—there's actually a car-length vehicle even between us. Neither one of us got out of the vehicle. And, again, the video showed, as he's saying that it's some good stuff, as he's handing it to me.

In its oral ruling at the conclusion of the post-conviction hearing, the court made the following findings: "[The Petitioner wa]s able to argue and cross[-]examine without that [unedited] video that there was a stopping and an opportunity for there to be a drug transaction other than the one with the [P]etitioner." In addition, the post-conviction court made the following findings in its order denying relief:

> Contrary to this claim of ineffective assistance of Counsel, the testimony of the Petitioner's trial attorney and the trial transcript showed that the Petitioner's trial attorney cross-examined the confidential informant to establish this encounter. The Petitioner's trial attorney also showed that, had the jury seen and heard the portion of the recording involving the confidential informant's friend, the Petitioner's argument that he was not involved in the transaction would have been weakened. This is because the encounter [between the CI and her friend] was brief, contained no video that could be construed to be a drug transaction, and contained no "drug-related" conversation.

The record clearly shows that trial counsel cross-examined the CI about whether she obtained the drugs from her friend rather than the Petitioner. In addition, the prosecutor testified that the CI could not have gotten the drugs from the friend because the redacted recording played for the jury showed that the Petitioner was the individual who gave the drugs to the CI.. We agree with the post-conviction court that trial counsel was able to cross-examine the CI about whether she actually obtained the drugs from her friend without the need for the jury to see the prejudicial, unedited recording. Again, our review of the entire unedited recording shows that it does not, in any way, indicate that the CI obtained the cocaine from her friend, rather than the Petitioner. For all these reasons, we conclude that the Petitioner has failed to establish that trial counsel was deficient in not using the unedited recording to cross-examine the CI or that but for this alleged deficiency, the result of the trial would have been different.

- 19 -

**3.  Failure to Object to the Trial Court's Comment Regarding the Unedited Recording.**

The Petitioner also argues that trial counsel was ineffective in failing to object to the trial court's comments to the jury about the unedited recording.  He specifically references the trial court's comments that the unedited recording was just transportation, that no one was there, and that anything else was irrelevant.  The Petitioner claims that trial counsel's failure to object to the court's comments regarding the unedited recording prejudiced his case because these comments supported the CI's testimony and bolstered her credibility.

During deliberations, the jury asked to view Exhibit 6, which prompted the following discussion:

| | |
|---|---|
| The Court: | Members of the jury, you've sent out a request here for the full unedited disc, and that was introduced as evidence because it forms the basis for the . . . shorter disc.  And on the shorter disc that you saw, there was the relevant evidence presented.  There's nothing on the longer one other than the transportation, from the time the device was given to the C.I., transporting it to the alleged scene and from the alleged scene.  That was edited out, along with some things that are not relevant and would be inadmissible, and so that has not been redacted from the full version, so, I think it would be inappropriate [to allow you to view Exhibit 6, the full version].  You really don't see much in the transportation.  There's no one there, just driving down the road, as I understand it? |
| [Prosecutor]: | That's correct. |
| The Court: | And then, if there is something else, basically, it's inadmissible, and so we redacted [the longer version to] the relevant parts [in] the short version[, which is Exhibit 7]. |
| | Would you like to see the short version again, rather than the long version?  If I understand it, you wanted to see the unedited disc? |

Juror:                     Sure.  Let's watch it again, yes.

The court then replayed Exhibit 7, the redacted recording for the jury.

After viewing the unedited recording in Exhibit 6, we agree with the post-conviction court that the details of the CI's transportation and the CI's brief exchange with her friend were irrelevant to the Petitioner's case.  Exhibit 6 does not provide any indication that drugs were transferred between the CI and her friend but does contain prejudicial evidence about the Petitioner using drugs while on probation or parole.  The trial court's comment was appropriate because it informed the jury that Exhibit 6 contained irrelevant evidence but did not disclose the prejudicial nature of some of the evidence contained therein.  Accordingly, we conclude that the Petitioner has failed to establish that trial counsel was deficient in failing to object to the trial court's comments to the jury about the unedited recording or that but for this alleged deficiency, the result of the trial would have been different.

### 4.  **Failure to Object to the Prosecutor's Comments to the Jury.**

Next, the Petitioner contends that trial counsel provided ineffective assistance in failing to object to the prosecutor's comment that he believed the trial court was correct in stating that the unedited recording was just transportation, that no one was there, and that anything else was irrelevant.  He again claims that trial counsel's failure to object to this comment supported the CI's testimony and bolstered her credibility.

We have already concluded that the unedited recording was irrelevant, and we find nothing problematic about the prosecutor's comment that the trial court was correct in its statement to the jury regarding Exhibit 6.  Because the Petitioner has failed to establish that trial counsel's performance was deficient or that but for the alleged deficiency, the outcome of the trial would have been different, he is not entitled to relief on this issue.

### 5.  **Failure to Object to Trial Court's Ruling that the Jury Could Not View the Unedited Recording.**

The Petitioner also argues that trial counsel was ineffective in failing to object to the trial court's ruling that the jury could not view the unedited recording, which had been previously admitted into evidence.  He claims that counsel's failure to object prejudiced him because the unedited recording shows that the CI "was less than truthful and that there was ample opportunity for [her] to obtain the drugs from her friend(s)" rather than the Petitioner.

- 21 -

Once again, we agree with the post-conviction court that the trial court properly found that the unedited recording, which contained material that was irrelevant and inadmissible at trial, had been redacted by agreement between the parties. Because the trial court's ruling regarding the unedited recording was proper, trial counsel was not ineffective in failing to object to the trial court's ruling or to the court's instruction to the jury. The record makes it clear that the only reason the unedited recording was admitted was to show the basis for the redacted recording. While we agree that a better practice would have been to admit the unedited recording for identification purposes only, we agree with the State that the intent of the parties as to this agreement was clear and that the trial court honored the parties' agreement to have the jury view only the redacted recording. For these reasons, we conclude the Petitioner has failed to establish that trial counsel was deficient in failing to object to the trial court's ruling or that but for this alleged deficiency, the outcome of the trial would have been different.

### 6. **Cumulative Effect of Trial Court's Errors.**

Finally, the Petitioner contends that "[t]he cumulative effect of trial counsel's errors prejudiced [him] as evidenced by the jury asking to see the unedited video and the jury convicting him of a lesser-included offense." However, we recognize that "[t]o warrant assessment under the cumulative error doctrine, there must have been more than one actual error committed in the trial proceedings." State v. Hester, 324 S.W.3d 1, 77 (Tenn. 2010). Because we have concluded that the Petitioner is not entitled to relief on any of the issues he raises on appeal, we need not consider the cumulative effect of any alleged errors committed by trial counsel.

### CONCLUSION

Because the Petitioner has failed to establish that trial counsel provided ineffective assistance, the judgment of the post-conviction court is affirmed.

_____
CAMILLE R. MCMULLEN, JUDGE